*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0151P (6th Cir.)
File Name: 00a0151p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA
  *Plaintiff-Appellee,*

  *v.*

  No. 98-6740

LONNIE ALLEN THOMAS,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 98-20072—Julia S. Gibbons, Chief District Judge.

Argued: February 2, 2000

Decided and Filed: April 27, 2000

Before: COLE and CLAY, Circuit Judges; BELL[*], District
Judge.

---

[*]The Honorable Robert Holmes Bell, United States District Judge for
the Western District of Michigan, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Stuart J. Canale, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Stephen B. Shankman, T. Clifton Harviel, Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Stuart J. Canale, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

BELL, D. J., delivered the opinion of the court, in which COLE, J., joined. CLAY, J. (pp. 11-14), delivered a separate concurring opinion.

---

**OPINION**

---

BELL, District Judge. Defendant Lonnie Allen Thomas was indicted on one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On September 11, 1998, Defendant entered a plea of guilty to Count 2, felon in possession of a firearm, with Count 1 to be dismissed at sentencing. Defendant was sentenced as an Armed Career Criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), and § 4B1.4 of the United States Sentencing Guidelines to 200 months imprisonment, to be followed by a term of three years supervised release. Count 1 was dismissed upon motion of the United States.

On appeal Defendant contends that the district court erred in sentencing him as an armed career criminal under § 924(e).

Although the issue was not raised by the parties, were it not for the rule of lenity, it is possible that this thoroughly ambiguous statute could be declared unconstitutional on the ground that it is void for vagueness. "[T]he void-for-vagueness doctrine requires that a [criminal] statute [be] define[d] . . . with sufficient definiteness [so] that ordinary people can understand . . . ." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also Grayned v. Rockford*, 408 U.S. 104, 108-109 (1972) (vague sentencing provisions which are not clear can raise constitutional questions). However, it is unnecessary under the circumstances of this case to express an opinion as to the constitutionality of the statute, and I expressly refrain from doing so. Because we must save a statute from its constitutional infirmity, and any doubt on the issue of statutory construction should thus be resolved in favor of avoiding the void for vagueness question, under the rule that, "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [this Court's] duty is to adopt the latter." *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909).

In this case, where the facts do not lend themselves to a determination of whether the crimes were "committed on occasions different from one another," the rule of lenity should be deemed to control. Indeed, although there were two different victims who were each raped multiple times in one another's presence during a continuous episode, the record does not remotely provide us with a clear and definitive answer to the question of whether the acts were "committed on occasions different from one another." Therefore, because we are confronted with an ambiguous criminal statute and a choice must be made between sentencing Defendant to the harsher mandatory minimum under the ACCA and the more lenient punishment under the sentencing guidelines, the rule of lenity dictates that Defendant be sentenced to the less harsh punishment under the sentencing guidelines.

Congress has provided in 18 U.S.C. § 924(e) that if a person who violates § 922(g) has three previous convictions for a violent felony or a serious drug offense, or both, "committed on occasions different from one another," that person shall be imprisoned not less than fifteen years.

In making its determination that Defendant was an armed career criminal, the district court relied on evidence of three prior convictions: 1) attempt to commit a felony: burglary third degree August 3, 1982; 2) rape July 10, 1986; and 3) rape July 10, 1986.[1]

There is no dispute that the three prior convictions were for violent offenses within the meaning of the ACCA. Defendant contends, however, that his July 10, 1986 convictions for rape do not constitute two separate predicate offenses under the statute because they arose out of one criminal episode.

Because there were no objections to the facts contained in the presentence report, the district court adopted the presentence report as its findings of fact concerning the the facts underlying the rape convictions.[2] In the early morning hours of January 1, 1986, two women in a car asked Thomas and his companion, Roosevelt T. McKinney ("Bucky") for directions to the Arkansas Bridge. The men agreed to show them the way and asked for a ride. The men got in the back

---

[1] Although the indictment listed a fourth conviction for convicted felon in possession of a handgun, the government conceded that this was not a crime of violence, and the district court did not consider it as a qualifying predicate offense for purposes of applying the ACCA.

[2] To the extent Thomas is now suggesting that the presentence report was incorrect, that argument has been waived. A failure to object to the presentence report waives any future objections. *See United States v. Ward*, 190 F.3d 483, 492 (6th Cir. 1999) (citing *United States v. Duranseau*, 19 F.3d 1117, 1123 (6th Cir. 1994)), *cert. denied sub nom. Morris v. United States*, 120 S.Ct. 940 (2000). *See also United States v. Cullens*, 67 F.3d 123, 124 (6th Cir. 1995) (per curiam) (defendant who fails to object to an error at sentencing waives his right to assert the error on appeal).

seat of the car.  The details of what occurred next are quoted from the presence report:[3]

> Thomas came over the front seat and started beating [the passenger] about the face.  Bucky grabbed [the driver] around the neck and told her Thomas would kill [the passenger] if she did not drive where they told her.
>
> Bucky tried to get the keys out of the ignition but he could not because there is a button that has to be pushed for the keys to come out.  He made [the driver] stop the car.  Thomas started raping [the passenger] and Bucky took [the driver] out and raped her on the ground.  Thomas beat [the passenger's] head against the window of the car.
>
> Thomas then made [the driver] drive to another place.  Thomas took [the passenger] out of the car and knocked her to the concrete and beat her head on a car that was parked there.  Thomas raped [the passenger] repeatedly and Bucky finally persuaded Thomas to get back in the car.  They then changed partners and Bucky raped [the passenger] twice vaginally and anally.  Thomas raped [the driver] vaginally and made her perform oral sex on him.

---

[3]Defendant contends that the district court erred in looking at the underlying facts of the predicate convictions.  Defendant's reliance on *United States v. Arnold*, 58 F.3d 1117, 1121-24 (6th Cir. 1995), and *United States v. Seaton*, 45 F.3d 108, 111-112 (6th Cir. 1995), in support of this contention is misplaced.  *Arnold* and *Seaton* stand for the proposition that a court should not consider the underlying facts of the predicate conviction in determining whether a predicate offense is a crime of violence for purposes of the Armed Career Criminal Act.  They do not speak to what the court should consider in determining whether the predicate offenses were "committed on occasions different from one another."  All of our opinions on this issue have involved consideration of the specific facts underlying the prior convictions.  Indeed, we cannot imagine how such a determination could be made without reference to the underlying facts of the predicate offenses.

(6th Cir. 1997) (holding two convictions for armed robberies of two residences in a duplex were not crimes committed on occasions different from one another); *United States v. Graves*, 60 F.3d 1183, 1186-87 (6th Cir. 1995) (holding the defendant's burglary of a home and his assault on a police officer in the woods just outside of the home were not crimes committed on occasions different from one another even though the assault upon the officer was at the same location and within moments of the burglary) *with United States v. Schieman*, 894 F.2d 909, 910-13 (7th Cir. 1990) (finding that a defendant who committed a burglary and several minutes later assaulted an officer pursuing him down the street committed crimes on occasions different from one another). *Compare United States v. McElyea,* 158 F.3d 1016 (9th Cir. 1998) (finding two burglary convictions that took place in adjoining stores within a short period of time were not committed on occasions different  from one another) *with United States v. Washington,* 898 F.2d 439, 440-42 (5th Cir. 1990) (finding that defendant who robbed same clerk at all-night convenience store twice within a few hours committed crimes on occasions different from one another).

There is no precise test that courts may use in determining whether crimes have been "committed on occasions different from one another."  *See United States v. Hudspeth*, 42 F.3d 1015, 1021 (7th Cir. 1994) (holding that "crimes [] committed sequentially, against different victims, at different times and different locations" were on occasions different from one another); *United States v. Tisdale*, 921 F.2d 1095, 1099 (10th Cir. 1990) ("The defendant had committed crimes on different occasions because [a]fter the defendant 'successfully completed' burglarizing one business, he was free to leave. The fact that he chose, instead to burglarize another business is evidence of his intent to engage in a separate criminal episode.");  *see also United States v. Balascsak*, 873 F.2d 673, 681 (3d Cir. 1989) (*en banc*) (where plurality concluded that a defendant must have been convicted twice before he committed his third predicate offense in order to be eligible for the enhancement under the ACCA).

common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.' Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies 'the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.'

*Id*. at 348. (citations omitted). Accordingly, the "policy of lenity means that the Court will not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what Congress intended." *Bifulco v. United States*, 447 U.S. 381, 387 (1979) (quoting *Ladner v. United States*, 358 U.S. 169, 178 (1958)). *See United States v. Weekley,* 24 F.3d 1125 (9th Cir. 1994) (affirming the district court's application of the rule of lenity in interpreting the ACCA); *United States v. Blake*, 59 F.3d 138, 140 (10th Cir. 1995) (stating that rule of lenity may be applied in interpreting Sentencing Guidelines).

In my view, neither the plain language of the statute nor the legislative history is instructive in interpreting the pertinent ambiguous language. In fact, when the language "committed on occasions different from another" was added to § 924(e), both the House and the Senate refrained from submitting a Report with the amendment. *See* 1988 U.S.C.C.A.N. 5937. Moreover, the case law fails to provide the requisite guidance to resolve the case and permit us to determine the outcome. In attempting to remove the ambiguity, case law interpreting the language "committed on occasions different from one another" has led to inconsistent outcomes in our Court as well as other Circuits. *Compare United States v. Brady,* 988 F.2d 664, 666, 669 (6th Cir. 1993) (holding that two robberies committed at different times and places and against different victims although committed within less than one hour of each other were crimes committed on occasions different from one another) *with United States v. Murphy*, 107 F.3d 1199, 1208

Eventually, Bucky told Thomas he thought he saw a police car. The two men exited the car and the women drove away.

Thomas was indicted in two separate indictments for the rape of the two women. He was convicted and sentenced to 5 years imprisonment on each indictment, to run concurrently.

The district court determined that the rapes of the two victims constituted two separate crimes for purposes of the ACCA:

> What we have here is, in the language of *Brady* [*United States v. Brady*, 988 F.2d 664 (6th Cir. 1993) (en banc)], an incident that is part of a series but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration. Here we have the rape of the first victim, which forms one episode. We then have an opportunity for Mr. Thomas to have ceased and desisted from further criminal conduct. Instead he made a decision at that point to commit a separate act of aggression against a second victim, and he raped the victim of the second rape that occurred in point in time.[4]

"Since determining whether the conduct was a single occasion or multiple occasions presents a legal question concerning the interpretation of a statute, we review the district court's decision de novo." *United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997).

Whether two prior offenses can be treated as predicate crimes under the ACCA does not depend on the number of convictions or the number of victims. *United States v. Brady*, 988 F.2d 664, 668 n. 5 (6th Cir. 1993) (citing *United States v.*

---

[4]The trial court found it somewhat significant, although possibly not determinative, that the vehicle was stopped and moved to a different location. The court mentioned this fact in order to clarify that this was not a case where the two victims and the two men were riding around in the car the entire time that these incidents occurred.

*Petty*, 828 F.2d 2, 3 (8th Cir. 1987) (a defendant's six convictions for six armed robberies committed simultaneously could count as only one predicate offense for purposes of the enhanced penalty of 18 U.S.C. § 1202(a) (repealed 1986), the predecessor statute of 18 U.S.C. § 924(e)). In *Brady* we observed that "§ 924(e) enhanced punishment for multiple criminal episodes that were distinct in time." *Id.* at 668 (quoting *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir. 1991)).

> An episode is an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration.

*Brady*, 988 F.2d at 668 (quoting *Hughes*, 924 F.2d at 1361).

In *Brady* the defendant committed an armed robbery at the Mack Avenue Beauty Shop. Thirty minutes later he committed a second armed robbery at the Club Continental Bar. *Id.* at 666. He argued that the two robberies should count as only one predicate offense for purposes of the ACCA, 18 U.S.C. § 924(e)(1), because they represented a single, continuous crime spree rather than two separate offenses. This court, sitting en banc, rejected his argument, and held that "[c]onsistent with the holdings of our sister circuits, we believe that offenses committed by a defendant at different times and places and against different victims, although committed within less than an hour of each other, are separate and distinct criminal episodes and that convictions for those crimes should be counted as separate predicate convictions under § 924(e)(1)." *Id.* at 669.

In arriving at our conclusion that the robberies constituted two separate episodes, we considered three cases from other circuits that had found two separate episodes where there had been a successful completion of the first crime before the second crime was embarked upon. We observed that in *United States v. Schieman*, 894 F.2d 909, 913 (7th Cir. 1990), the Seventh Circuit emphasized that "the defendant had successfully completed his burglary and had safely escaped

---

## CONCURRENCE

---

CLAY, Circuit Judge, concurring. Although I concur in the outcome reached by the majority, I do so based upon the rule of lenity. I believe the language of the statute "committed on occasions different from one another" is ambiguous in that though it provides for an enhanced punishment, when the punishment is to be applied cannot be determined by the statute's plain language. Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). In such a case, the well-established judicial doctrine of "the rule of lenity" applies, "resolv[ing] the ambiguity in favor of the more lenient punishment." BLACK'S LAW DICTIONARY 1332-33 (7th ed. 1999).

It is a well settled canon of statutory construction that when interpreting statutes, "[t]he language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). However, if the language in the statute is not clear, we may resort to the legislative history to ascertain the meaning of the language. *See In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 549 (6th Cir. 1999); *see also United States v. Kassouf*, 144 F.3d 952, 955 (6th Cir. 1998). If the statute remains ambiguous after consideration of its plain meaning, structure and legislative history, the rule of lenity is applied in favor of criminal defendants. *See United States v. Hill*, 55 F.3d 1197, 1206 (6th Cir. 1995).

In *United States v. Bass,* 404 U.S. 336, 347-48 (1971) the Supreme Court enunciated the policies behind the time honored axiom of lenity:

> This principle [rule of lenity] is founded on two policies that have long been part of our tradition. First, 'a fair warning should be given to the world in language that the

**Conclusion**

Accordingly, we hold that Defendant-Appellant Thomas' 1986 convictions for the rapes of the two women constituted a single criminal episode for purposes of defining predicate offenses for an enhanced sentence as an Armed Career Criminal under 18 U.S.C. § 924(e). As a result, Defendant has been convicted of only two predicate felonies under § 924(e). His sentence was therefore improperly enhanced under § 924(e) and U.S.S.G. § 4B1.4. For the foregoing reasons, we hereby REMAND for resentencing.

from the premises, thus concluding the burglary episode before he undertook an assault on the officer investigating the case." *Brady*, 988 F.2d at 668. In *United States v. Tisdale*, 921 F.2d 1095, 1099 (10th Cir. 1990), the Tenth Circuit held that three burglaries committed "successfully" at different stores within the same shopping mall during the same evening were separate criminal episodes. We observed that the Tenth Circuit had noted that "[a]fter each burglary, the defendant was free to desist and leave." *Brady*, 988 F.2d at 668. Finally, we noted that in *United States v. Washington*, 898 F.2d 439, 441-42 (5th Cir. 1990), "[b]ecause the defendant had completed the first offense and safely escaped, the court refused to consider the second offense a part of a single crime spree." *Brady*, 988 F.2d at 669.

Consistent with the analyses in the cases from the Seventh, Tenth and Fifth Circuits, we noted in *Brady* that "while defendant Brady sat at the Club Continental Bar with his concealed shotgun, he could have decided that the one robbery he had committed was enough for the evening. Instead, he decided to rob again." 988 F.2d at 669.

We built on this theme of conclusion of the first offense in *United States v. Wilson*, 27 F.3d 1126, 1131 (6th Cir. 1994). In *Wilson* the defendant was convicted of two criminal sexual conduct offenses on the same date and in the same house, but against separate victims, and on different floors and locations within the house. *Id.* at 1131. We found no error in the district court's determination that these were separate offenses for purposes of § 924(e): "Defendant could have halted his criminal rampage at any time. Yet, he chose to continue selecting different victims in separate places." *Id.*

In *United States v. Graves*, 60 F.3d 1183 (6th Cir. 1995), noting that the *Brady* court had "considered whether or not the defendant safely escaped from one crime scene before he committed the second crime," we held that the defendant's burglary of a home and his assault on a police officer in the woods just outside of the home constituted a single episode of criminal conduct because the assault upon the officer was at

the same location and within moments of the burglary. *Id.* at 1186-87.

The question of single or multiple episodes was most recently addressed in *United States v. Murphy*, 107 F.3d 1199 (6th Cir. 1997). After Murphy and two accomplices robbed the occupant of the first residence of a duplex, Murphy remained in the first residence to prevent the occupant from calling the police, while his accomplices robbed the adjoining residence. Although Murphy was convicted of both robberies, we held that his convictions for robberies of two sides of the duplex constituted a single criminal episode for purposes of § 924(e). We reasoned that because "Murphy never left his original location, he never ceased his original conduct and he never successfully escaped the site of the first crime until the second was complete." 107 F.3d at 1210.

Our reasoning in these cases is guided by the purpose of the ACCA, which is to target recidivism. As we noted in *Hughes*,

> The propriety of inflicting severer punishment upon [repeat] offenders has long been recognized in this country and in England. They are not punished the second time for the earlier offense, but the repetition of criminal conduct aggravates their guilt and justifies heavier penalties when they are again convicted.

924 F.2d at 1361 (quoting *Graham v. West Virginia*, 224 U.S. 616, 623 (1912)). "Because Congress intended to punish recidivists, the predicate conduct must amount to separate and distinct transactions in some definable sense." *Murphy*, 107 F.3d at 1210. There must be some "reasoned basis" for considering criminal conduct to be a definable event. *Id.* As we cautioned in *Graves*, "[i]t should not be necessary to reach to apply this statute; instead, the statute should be applied where the facts demand its application." 60 F.3d at 1187.

Considering whether the first crime was concluded provides a reasoned basis for determining whether the conduct constitutes more than one episode such that it can be

considered a "repetition of criminal conduct." If the first crime is concluded we can safely infer that the defendant entered into the second crime with a fresh purpose. As noted in *United States v. Pope*, 132 F.3d 684, 692 (11th Cir. 1998), the courts of appeals are "virtually unanimous" in stating that "the 'successful' completion of one crime plus a subsequent conscious decision to commit another crime makes that second crime distinct from the first for the purposes of the ACCA." *Id.*

In the case before us today, it is the absence of a completion or definable endpoint of the first crime before the second crime was begun that distinguishes this case from *Brady* and *Wilson*, and brings it more in line with our opinions in *Murphy* and *Graves*. "The defendant in *Wilson* completed one sexual assault and then elected to seek out another victim in another location after completing the first crime and leaving the first location." *Murphy*, 107 F.3d at 1210. By contrast, in this case the sexual assault started when both men entered the women's vehicle and did not end until both men exited the vehicle when they thought they had seen a police car. It is not sufficient to argue, as the government has argued in this case, that the rapes were necessarily sequential because it was physically impossible for Thomas to rape two women at one time. We cannot ignore the fact that the crime encompassed more than sexual penetration. Thomas and Bucky asserted dominion and control over both women at the same time. They kept both women under their control throughout the duration of this incident. There was no conclusion of Thomas' criminal activity against the first woman when he began raping the second woman. With the assistance of his accomplice, Thomas carried out his aggressions against the two women simultaneously.

Thomas' rapes of the two women cannot be deemed to have been "committed on occasions different from one another." Both rapes were part of one continuous episode. Each rape was not a "punctuated occurrence with a limited duration." *See Brady*, 988 F.2d at 668. Rather, the rapes of both women were part of a single, ongoing criminal episode.