**David FIELDS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 15A01–0402–CR–85.**

Court of Appeals of Indiana.

April 18, 2005.

Rehearing Denied June 20, 2005.

**8.** Given the result of this appeal, we deny Miami's request to assess appellate attorney fees against John and Georgia.

Alison T. Frazier, Eckert Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

David Fields appeals the sentences imposed after he entered pleas of guilty to burglary, conspiracy to commit burglary, attempted robbery, and conspiracy to commit robbery, all as Class A felonies. He raises two issues on appeal, which we consolidate and restate as whether the conspiracy to commit a burglary and a robbery that is attempted during the burglary amount to a single episode of criminal conduct for sentencing purposes.

The State asserts on cross-appeal the trial court erred in allowing Fields to challenge two of his convictions on double jeopardy grounds, which challenge resulted in the merger of the convictions of attempted robbery and conspiracy to commit robbery. Finally, we address *sua sponte* whether there was a factual basis for Fields' plea of guilty to conspiracy to commit burglary as a Class A felony.

We affirm in part, reverse in part, and remand.[1]

## FACTS AND PROCEDURAL HISTORY

Prior to August 2, 2002, Fields, Michael Green, Nathan Haas, and Brian Allen agreed to steal money they believed they would find in the home of Larry and Judy Pohlgeers. Green and Haas had allegedly burglarized the same house in 2000. On the evening of August 5, 2002, Fields and Green broke into the house while the other two stood watch outside. Fields beat Mr. Pohlgeers with a bicycle seat post and Green beat Mrs. Pohlgeers with a pipe.

Fields was charged with attempted robbery as a Class A felony, conspiracy to commit robbery as a Class A felony, burglary as a Class A felony, conspiracy to commit burglary as a Class A felony, aggravated battery as a Class B felony, and battery with a deadly weapon as a Class C felony. Fields entered into a plea agreement pursuant to which he entered pleas of guilty to attempted robbery, conspiracy to commit robbery, burglary, and conspiracy to commit burglary, all as Class A felonies. Fields agreed he would be "sentenced by the Court, at the sole discretion of the Court, pursuant to Indiana sentencing laws." (Appellant's App. at 356.) The trial court merged the conspiracy to commit robbery count into the attempted robbery count and sentenced Fields to three fifty-year terms, with seven years suspended to probation on each. The sentences were ordered served consecutively.

## DISCUSSION

◼◼◼◼ Sentencing is generally left to the discretion of trial courts.[2] *Monyhan v. State*, 780 N.E.2d 1187, 1189–90 (Ind.Ct. App.2003). However, we are duty-bound to correct sentences that violate the trial court's statutory authority. *Id.* at 1189.

### 1. Consecutive Sentencing

Fields argues he should not have been sentenced to consecutive terms exceeding a total of fifty-five years.

1. We heard oral argument in this case on November 19, 2004 in Boonville. We thank the Warrick County Bench and Bar for its hospitality and commend counsel for the quality of their advocacy.

2. The limitations on the trial court's sentencing discretion imposed in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied* —— U.S. ——, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004), were raised at oral argument and Fields submitted additional authority addressing *Blakely*. In *Blakely*, the Supreme Court held the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating factors used to increase the sentence for a crime above the presumptive sentence assigned by the legislature. 542 U.S. at ——, 124 S.Ct. at 2536. The Court held "the fact of a prior conviction" is an exception to this rule. *Id.* at ——, 124 S.Ct. at 2536. However, *Blakely* is not implicated in the situation where a trial court orders consecutive sentences based on its discretion as defined by Ind.Code § 35–50–1–2(c). *Smylie v. State*, 823 N.E.2d 679, 686 (Ind.2005). We therefore need not consider *Blakely* in our analysis of Fields' cumulative sentence.

In addition to the consecutive sentencing, the trial court imposed enhanced sentences of fifty years for Fields' Class A felonies. The presumptive sentence for such felonies is thirty years. Ind.Code § 35–50–2–4. However, the enhanced sentences do not run afoul of *Blakely*. The *Blakely* court recognized a defendant may waive his right to jury factfinding at sentencing. 542 U.S. at ——, 124 S.Ct. at 2541. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. *Id.* at ——, 124 S.Ct. at 2541. At his sentencing hearing, Fields admitted to his criminal history, which the trial court could properly consider as an aggravating factor to support the enhancement of Fields' sentences.

Ind.Code § 35–50–1–2 provides in pertinent part:

> The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

The next-higher class of felony than those to which Fields entered his guilty pleas is murder, for which the presumptive sentence is fifty-five years. Ind.Code § 35–50–2–3. Fields' sentences totaled 150 years, with seven years suspended on each count for a total executed sentence of 129 years.

Burglary as a Class A felony is a "crime of violence" under Ind.Code § 35–50–1–2. Our supreme court has determined "crimes of violence" is a defined term, as the statute provides a straightforward list. *Ellis v. State,* 736 N.E.2d 731, 736 (Ind. 2000). Ind.Code § 35–50–1–2(a) states:

> As used in this section, "crime of violence" means:
>
> (1) murder (IC 35–42–1–1);
>
> (2) attempted murder (IC 35–41–5–1);
>
> (3) voluntary manslaughter (IC 35–42–1–3);
>
> (4) involuntary manslaughter (IC 35–42–1–4);
>
> (5) reckless homicide (IC 35–42–1–5);
>
> (6) aggravated battery (IC 35–42–2–1.5);
>
> (7) kidnapping (IC 35–42–3–2);
>
> (8) rape (IC 35–42–4–1);

(9) criminal deviate conduct (IC 35–42–4–2);

(10) child molesting (IC 35–42–4–3);

(11) sexual misconduct with a minor as a Class A felony under IC 35–42–4–9(a)(2) or a Class B felony under IC 35–42–4–9(b)(2);

(12) robbery as a Class A felony or a Class B felony (IC 35–42–5–1);

(13) burglary as a Class A felony or a Class B felony (IC 35–43–2–1); or

(14) causing death when operating a motor vehicle (IC 9–30–5–5).

In *Ellis,* the jury found Ellis guilty of murder, two counts of attempted murder,[3] and burglary. The trial court imposed consecutive sentences of sixty-five years for murder and fifty years for each attempted murder. It also ordered a concurrent twenty-year sentence for burglary. The sentence thus totaled 165 years. *Id.* at 733. Our supreme court interpreted Ind.Code § 35–50–1–2 to exempt from the consecutive sentencing limitation consecutive sentencing for a crime of violence and a crime that is not a crime of violence.

The *Ellis* court determined the trial court erred when it ordered Ellis' sentences for the two counts of attempted murder to be served consecutively for a total term of 100 years. "This portion of the sentence exceeded the statutory limitation. The limitation should have been fifty-five years for consecutive sentencing, i.e., the presumptive sentence for the felony one class higher than attempted murder." *Id.* at 737–38.

The trial court did not err, however, by ordering the murder sentence served consecutively to the two counts of attempted murder. *Id.* at 738. Therefore, Ellis should have been sentenced to sixty-five years for murder, to be served consecutively with a fifty-five year sentence for

---

**3.** When *Ellis* was decided, attempted murder was not included as a "crime of violence."

the attempted murders, for a total sentence of one hundred and twenty years. *Id.*

*Ellis* appears to prohibit three consecutive sentences when, as Fields argues happened in the case before us, an episode of criminal conduct includes one crime of violence and two crimes that are not crimes of violence. Therefore, if Fields' crimes were a single "episode," he could properly have been sentenced to at most 105 years—fifty years for the burglary and fifty-five for the other crimes.

An "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind.Code § 35–50–1–2(b). The test is whether the alleged conduct was so closely related in time, place, and circumstances that a complete account of one charge cannot be related without referring to details of the other charge. *Monyhan*, 780 N.E.2d at 1190.

■ Neither party offers Indiana case law addressing whether a conspiracy to commit an offense and an offense committed during the execution of the conspiracy amount to a single episode of criminal conduct. Fields asserts a complete account of the conspiracy charge cannot be related without reference to the attempted robbery, as the conspiracy was to burglarize that particular residence: "the agreed plan for the current burglary was to go to the exact same place in the exact same residence to try to take money ... the details of the conspiracy and the details of the offense are exactly the same." (Appellant's Br. at 6.)

The State does not argue conspiracy to commit burglary and the resulting burglary are not part of a single episode, but it does argue the attempted robbery and the conspiracy to commit burglary were not part of the same episode of criminal conduct. It notes the attempted robbery took place on August 5, when Fields and Green entered the house and attacked the victims. The conspiracy to commit burglary occurred at least three days earlier and the overt act in furtherance of the conspiracy was "scoping out" (Guilty Plea Tr. at 5–6) the Pohlgeers' house on August 2. Therefore, the State asserts, the two crimes were not simultaneous or contemporaneous and each can be related without reference to the other.

Fields notes the conspiracy was to break into the Pohlgeers' residence and take money. When Fields and Green did break in, they went to the dresser drawer looking for money. On their way, they encountered the Pohlgeerses and committed the other crimes. That, Fields asserts, was all part of the same episode.

In *Tedlock v. State,* 656 N.E.2d 273, 276 (Ind.Ct.App.1995), we examined definitions of the term "episode" that were consistent with and further illuminated our legislature's definition. In *State v. Ferraro,* 8 Haw.App. 284, 800 P.2d 623, 629 (1990), the Hawaii Court of Appeals defined "episode" similarly to the definition adopted by our legislature: "the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." The *Ferraro* court referred to the commentary from ABA Standard 12–2.2(a), which reads:

'Episode' means 'an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series.' This would cover the simultaneous robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of

three pieces of property, or *such contemporaneous and related crimes as burglary and larceny,* or kidnapping and robbery.

*Tedlock,* 656 N.E.2d at 276 (emphasis supplied).

It therefore seems likely a burglary and a robbery or attempted robbery that occurred during the burglary are typically part of an "episode." Neither party offers authority from this state that explicitly addresses whether the "scoping out" aspect of a conspiracy to commit a burglary during which a robbery was attempted would separate the conspiracy from the attempted robbery to such an extent the two offenses would not be part of the same episode. Our independent research reveals no such authority, and few decisions from other jurisdictions address this specific issue. *See, e.g., Bryant v. Blount,* 261 So.2d 847, 850 (Fla.Dist.Ct.App.1972) (holding, without explanation, conspiracy to commit bribery and the bribery itself were the same criminal episode for purposes of the Florida speedy trial act), *cert. denied* 267 So.2d 82 (Fla.1972).

We believe Fields' conspiracy to commit burglary and the attempted robbery that took place as the conspiracy was carried out amount to a single episode of criminal conduct. We are persuaded by the reasoning articulated in *United States v. Hobbs,* 136 F.3d 384 (4th Cir.1998), *cert. denied* 524 U.S. 945, 118 S.Ct. 2358, 141 L.Ed.2d 727 (1998), and *United States v. Thomas,* 211 F.3d 316 (6th Cir.2000), where the courts addressed when two or more offenses are included in a single "episode" for purposes of the Armed Career Criminal Act ("ACCA").[4]

In *Hobbs,* the court stated the test "that is now applied in every circuit," 136 F.3d at 387–88, and is substantially the same as the Indiana standard at issue in the case before us. Crimes occur on occasions different from one another under the ACCA if each arose out of a "separate and distinct criminal episode." *Id.* at 388. The predicate ACCA offenses must be those that can be isolated with a beginning and an end. *Id.* In engaging in this analysis, sentencing courts consider: 1) whether the offenses occurred in different geographic locations; 2) whether the offenses were substantively different; and 3) whether the offenses involved multiple victims or multiple criminal objectives. *Id.* These factors may be considered together or independently, and if any one of the factors has a strong presence, it can by itself segregate an extended criminal enterprise into a series of separate and distinct episodes. *Id.*

We decline to characterize Fields' conspiracy to commit burglary and the attempted robbery that took place as the conspiracy was being executed as separate "isolated" offenses "with a beginning and an end." While the formulation of the conspiracy and the execution of the conspiracy apparently took place in different locations, the two offenses did not involve "multiple victims or multiple criminal objectives." Both offenses had the same victims, the Pohlgeerses, and the same objectives, to break into their home and take their property. To that extent, we decline to find the offenses "substantially different."

In *Thomas,* the court addressed the purpose of the Act, which is to target recidivism. 211 F.3d at 320. "Recidivism" is "[a] tendency to relapse into a habit of

---

4.   18 U.S.C. § 924(e). The Act provides an enhanced sentence for a felon in possession of a firearm when the felon had three prior

convictions of certain crimes "committed on occasions different from one another."

criminal activity or behavior." Black's Law Dictionary at 1276 (7th ed.1999). We note initially that Fields' participation in the same crime he had conspired three days earlier to commit cannot be characterized as such a "tendency to relapse" into a "habit" of criminal behavior.

The *Thomas* court noted the propriety of inflicting more severe punishment on repeat offenders has long been recognized in this country and in England. They are not punished the second time for the earlier offense; rather, the repetition of criminal conduct aggravates their guilt and justifies heavier penalties when they are again convicted. 211 F.3d at 321. That repeat offenders should be punished more severely has of course long been recognized by the Indiana courts and legislature. *See, e.g.,* Ind.Code § 35–50–2–8 (court shall sentence a person found to be a habitual offender to an additional fixed term that is not less than the presumptive sentence for the underlying offense nor more than three times the presumptive sentence for the underlying offense); *McCorker v. State,* 797 N.E.2d 257, 268 (Ind.2003) (defendant's significant criminal history and inability to rehabilitate justified consecutive sentences); *Kelley v. State,* 204 Ind. 612, 185 N.E. 453, 457 (Ind.1933) ("The statute imposes a heavier penalty for the commission of a felony by one who had been previously twice convicted and imprisoned for the commission of a felony. The punishment is for the new crime only. The punishment is more severe because the defendant is an habitual criminal[.]").

The *Thomas* court stated that because Congress intended to punish recidivists, the predicate conduct must amount to separate and distinct transactions in some definable sense. 211 F.3d at 320. It noted the courts of appeals are virtually unanimous in stating the successful completion of one crime plus a subsequent conscious decision to commit another crime makes that second crime distinct from the first for the purposes of the Act. *Id.* "If the first crime is concluded we can safely infer that the defendant entered into the second crime with a fresh purpose." *Id.*

Under this standard we decline to hold Fields' conspiracy and the crime he conspired to commit are different criminal episodes. When Fields broke into the Pohlgeers' home he was not entering into a second crime "with a fresh purpose" nor does that act reflect "a subsequent conscious decision to commit another crime." We accordingly hold Fields' crimes of conspiracy to commit burglary and attempted robbery were a "single episode" of criminal conduct, and we instruct the trial court to resentence Fields to not more than 105 years, representing a maximum of fifty years for the burglary and a maximum of fifty-five years for the other crimes.

### 2. *Double Jeopardy*

Pursuant to his plea agreement, Fields entered pleas of guilty to attempted robbery, conspiracy to commit robbery, burglary, and conspiracy to commit burglary, all as Class A felonies. Fields agreed he would be "sentenced by the Court, at the sole discretion of the Court, pursuant to Indiana sentencing laws." (Appellant's App. at 356.) The trial court merged the attempted robbery and conspiracy to commit robbery charges and sentenced Fields to three fifty-year terms, with seven years suspended to probation on each.

■ The State asserts the trial court's merger of Fields' convictions of conspiracy to commit robbery and attempted robbery was error because it violated the express terms of the plea agreement. We find no error. The sentence contemplated in Fields' plea agreement would violate Ind.

Code § 35–41–5–3,[5] which explicitly prohibits the sentence Fields would have received absent the trial court's merger: "A person may not be convicted of both a conspiracy and an attempt with respect to the same underlying crime." We accordingly decline the State's invitation to hold a sentence that would violate a statute or subject Fields to double jeopardy[6] is appropriate just because Fields agreed to it.

We note initially that the State has waived this allegation of error because it did not object when Fields raised this argument at the sentencing hearing. The State noted at that hearing "Counts I and II refer to robbery and I believe are merged by statute," (Sentencing Tr. at 102) then went on to argue no double jeopardy arose from the convictions of burglary and robbery: "Clearly those, Counts I and II [attempted robbery and conspiracy to commit robbery] are different from Count III from an actual evidence test." (*Id.* at 104.)

■ Notwithstanding the waiver, we find no error. Fields' plea agreement provided Fields would plead guilty to and be sentenced on four Class A felony charges. The State correctly notes a plea agreement binds the defendant, the State, and the trial court; if the court accepts such an agreement, it is strictly bound by its sentencing provision and is precluded from imposing any sentence other than that required by the plea agreement. *Bennett v. State,* 802 N.E.2d 919, 921–22 (Ind.2004). The *Bennett* court went on to state, however: "Of course, even if the product of an

agreement, a sentence imposed contrary to statutory authority would render a plea agreement void and unenforceable." *Id.* at 922 n.2.

■ A trial court has the power to vacate an illegal sentence and impose a proper one even if the sentencing error occurs following a guilty plea. *Ennis v. State,* 806 N.E.2d 804, 809 (Ind.Ct.App.2004). *See also Niece v. State,* 456 N.E.2d 1081, 1084 (Ind.Ct.App.1983): "It makes no difference whether the sentencing error followed a trial or a guilty plea, the court has the power to correct the illegal sentence in either case."

The trial court therefore did not err when it modified Fields' sentence to comply with statutory requirements even though the modification was inconsistent with the plea agreement.

■ Furthermore, we find *sua sponte* Fields was improperly convicted of conspiracy to commit burglary as a Class A felony as the factual basis for his guilty plea supports only a conviction of conspiracy to commit burglary as a Class B felony.

A person who breaks and enters the building or structure of another person with intent to commit a felony in it commits burglary. Ind.Code § 35–43–2–1. Burglary is a Class C felony, but it is a Class B felony if the building or structure is a dwelling and a Class A felony if it results in bodily injury or serious bodily injury to any person other than a defendant. *Id.* A person conspires to commit a felony when, with intent to commit the

---

**5.** The State notes a defendant who pleads guilty waives his right to collaterally attack his plea based on double jeopardy, *citing Mapp v. State,* 770 N.E.2d 332, 334–35 (Ind. 2002). *See, e.g., Lee v. State,* 816 N.E.2d 35, 39 (Ind.2004) (post-conviction petitioner could not challenge plea agreement that included an illegal sentencing provision). The State does not explain how the trial court's

merger of Fields' convictions *at sentencing* might be considered a "collateral attack" by Fields, and we decline to so hold.

**6.** *See Richardson v. State,* 717 N.E.2d 32, 65 (Ind.1999) (Boehm, J., concurring) (characterizing Ind.Code § 35–41–5–3 as reflecting double jeopardy law).

felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. Ind.Code § 35–41–5–2.

The State concedes in its brief that the "overt act" in furtherance of the conspiracy to commit burglary was the act of "scoping out" the residence three days before Fields and his accomplices broke into the house (Br. of Appellee at 7) ("[A]ll elements of the conspiracy to commit burglary charge were satisfied by the act of "scoping" on August 2, 2002."). It further notes the charged conspiracy and the robbery of the Pohlgeers' home were separated by three days. *Id.* Other than the "scoping," the charging information alleges no activity in furtherance of the conspiracy on August 2.[7] The allegation of "scoping" as the act in furtherance of Fields' conspiracy to commit burglary supports a plea of guilty to a conspiracy to commit a felony in a dwelling but does not support a plea of guilty to a conspiracy to commit a felony resulting in bodily injury to another person.

We addressed a similar situation in *Williams v. State*, 748 N.E.2d 887, 894 (Ind.Ct.App.2001), where Williams was convicted of conspiracy to commit murder and aiding burglary. The evidence presented by the State to establish the alleged murder conspiracy consisted of the testimony of two witnesses that they agreed to execute a plan Williams formulated to rob the victim of money and drugs. The State presented testimony that Williams provided weapons for the purpose of bringing the victim under control if necessary and that Williams provided a pillowcase to put over the victim's head so the victim would not see them leave. Thus, we determined, the object of the conspiracy as established by the State's evidence was to rob the victim but leave him alive. *Id.* We stated: "An agreement to rob is not a conspiracy to murder unless the agreement envisions killing the victim." *Id.* Because of the absence of any evidence Williams or either of his accomplices formed a specific intent to kill the victim, we held Williams' conviction of conspiracy to commit murder must be vacated. *Id.* at 895. Similarly, there is no evidence Fields' conspiracy involved any specific intent to cause his victims bodily injury.

We accordingly vacate Fields' conviction of conspiracy to commit burglary as a Class A felony and direct the trial court on remand to enter a conviction of conspiracy to commit burglary as a Class B felony. We further instruct the court to resentence Fields in a manner consistent with our determination his offenses of conspiracy to commit burglary and attempted robbery represent a single episode of criminal conduct for purposes of Ind.Code § 35–50–1–2.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and BAILEY, J., concur.

---

7. The charging information also alleges "scoping" on August 4. It alleges a number of acts on August 5, but those allegations all appear to involve the burglary itself, and not the agreement to commit it.