**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 07 2013, 10:21 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**DAVID FIELDS**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DAVID FIELDS, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 15A01-1301-PC-3 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE DEARBORN SUPERIOR COURT
The Honorable James D. Humphrey, Judge
Cause No. 15C01-0904-PC-1

**November 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

David Fields, pro se, appeals the post-conviction court's denial of his petition for post-conviction relief. Fields presents one issue on appeal: whether he was denied the effective assistance of his trial counsel. Concluding that Fields was not denied the effective assistance of his trial counsel, we affirm.

## Facts and Procedural History

In 2000, Fields's co-defendants, Michael Green and Nathan Haas, burglarized the home of Larry and Judith Pohlgeers in Dearborn County. Green and Haas took $850 from a dresser drawer. Using information gained in the first burglary, Green, Haas, Fields, and Brian Allen planned a second burglary. On August 2, 2002, they went to scope out the Pohlgeerses' home, but left because there were too many people present. On August 4, 2002, they again went to scope out the residence.

On August 5, 2002, Fields and his co-defendants decided to go ahead with the burglary. They were dressed in black, and Fields and Green wore pantyhose over their heads. They wore latex gloves and brought with them some pipes that they had covered in electrical tape. The Pohlgeerses were at home watching television. Fields and Green went inside, while Haas and Allen kept watch outside. Green attacked Mrs. Pohlgeers, and Fields attacked Mr. Pohlgeers, hitting them on the head with the pipes they had brought. They searched the dresser for money, but left when they did not find any.

As a result of the attack, the Pohlgeerses both required stitches. Mr. Pohlgeers was sixty-seven years old and recovering from hip replacement surgery at the time of the attack. He was left with a permanent crease in his skull where Fields had hit him with a pipe. He has had ringing in his ears ever since. Mrs. Pohlgeers was sixty-five years old at the time of the attack and has permanent hearing loss in one ear from her injuries. The Pohlgeers no longer felt safe in their home, and family members did not want to visit there anymore. Therefore, they sold the home and incurred a loss on the sale.

The similarity of the second burglary to the first led the police to suspect Green and Haas. Their investigation of the two men led them to Fields as well. When Fields heard that the police were looking for him, he turned himself in. Fields was charged with [count I] attempted robbery, a class A felony; [count II] conspiracy to commit robbery, a class A felony; [count III] burglary, a class A felony; [count IV] conspiracy to commit burglary, a class A felony; [count V] aggravated battery, a class B felony; and [count VI] battery with a deadly weapon, a class C felony. On

2

September 25, 2003, he entered a plea agreement, in which he agreed to plead guilty to attempted robbery, conspiracy to commit robbery, burglary, and conspiracy to commit burglary. The battery charges were dropped, and the conspiracy to commit robbery conviction was merged with the attempted robbery conviction.

Fields was originally sentenced to three consecutive terms of fifty years, with twenty-one years suspended. As aggravating circumstances, the trial court found the age of the victims, that Fields had violated probation, that the victims were left with permanent injuries, Fields's criminal history, and the calculating method in which the offenses were carried out. As mitigating circumstances, the trial court found that Fields had cooperated with the authorities and that his incarceration would be a hardship on his children. The trial court accorded little weight to these mitigators. On direct appeal, our court reversed Fields's sentence, holding that the 150–year sentence exceeded the trial court's statutory authority and that there was an insufficient factual basis to convict him of conspiracy to commit burglary as a class A felony. Fields v. State, 825 N.E.2d 841, 847, 849 (Ind. Ct. App. 2005), reh'g denied, trans. denied.[1]

[1] Our Court found that the factual basis did not support a conviction for conspiracy to commit burglary as a class A felony. Fields, 825 N.E.2d at 848. The overt act alleged by the State was the fact that the co-defendants scoped out the residence. This fact supports conspiracy to commit burglary as a class B felony, since they planned to enter a residence. Id. at 848-49. However, the factual basis did not show that they planned to inflict bodily injury, which is required for a class A felony. Id. at 849.
Our Court also concluded that Fields's offenses were part of the same criminal episode. Id. at 846. Therefore, he could only get a maximum of fifty years for burglary, and a maximum of fifty-five years for the remaining offenses, for a total of 105 years. Id. at 847.

The case was remanded with instructions to sentence Fields for conspiracy to commit burglary as a class B felony and to impose a total sentence of no more than 105 years. Id.

On October 12, 2005, a re-sentencing hearing was held. During the hearing, the trial court stated that "criminal history is an aggravating circumstance here to sentence the defendant beyond the presumptive or advisory sentence and with the way that he treated Mr. and Mrs. Pohlgeers and also ... he is a predator." Re-sentencing Tr. at 21. In its re-sentencing order, the trial court cited Fields's record of criminal activity and violence as aggravating circumstances and his entering a plea agreement as a mitigating circumstance. The trial court sentenced Fields to fifty years for attempted robbery, fifty years for burglary, and five years for conspiracy to commit burglary, for an aggregate sentence of 105 years executed.

Fields v. State, 852 N.E.2d 1030, 1031-32 (Ind. Ct. App. 2006).

Following resentencing, Fields again appealed, challenging the severity and appropriateness of his new sentence, and we affirmed. Id. at 1034. In 2009, Fields filed a pro se petition for post-conviction relief, and in 2012, he filed an amended petition for post-conviction relief. In November 2012, the post-conviction court held a hearing on Fields's petition, at which Fields's trial attorney, Frank Cardis, was the sole witness. In December 2012, the post-conviction court issued findings of fact and conclusions of law and denied Fields's petition. This appeal followed.

Discussion and Decision

I. Standard of Review

To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Thacker v. State, 715 N.E.2d 1281, 1284 (Ind. Ct. App. 1999), trans. denied. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, which is error that leaves us with a definite and firm conviction that a mistake has been made. Benefield v. State, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011). We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. Id. We examine only the probative evidence and reasonable inferences that support the post-conviction court's determination and we do not reweigh the evidence or judge the credibility of the witnesses. Conner v. State, 711 N.E.2d 1238, 1245 (Ind. 1999), cert. denied, 531 U.S. 829 (2000).

We review claims of ineffective assistance of counsel under the two prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Bieghler v. State, 690 N.E.2d

4

188, 192 (Ind. 1997), cert. denied, 525 U.S. 1021 (1998). To prevail on a claim of ineffective assistance of counsel, the petitioner must show that his counsel's performance was deficient and that the lack of reasonable representation prejudiced him. Randolph v. State, 802 N.E.2d 1008, 1013 (Ind. Ct. App. 2004), trans. denied. To satisfy the first prong, the petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that counsel committed errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006). To show prejudice, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Pruitt v. State, 903 N.E.2d 899, 906 (Ind. 2009).

Under this standard, judicial scrutiny of counsel's performance must be highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Bieghler, 690 N.E.2d at 193 (citing Strickland, 466 U.S. at 689). Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord that decision deference. Randolph, 802 N.E.2d at 1013. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. Id.

In a case such as this one, where the petitioner pleaded guilty, the two prongs remain, but our supreme court has outlined what is required to show prejudice when there was no trial. In all cases, the petitioner must demonstrate "a reasonable probability that the hypothetical reasonable defendant would not have pled guilty and elected to go to

5

trial if properly advised." Segura v. State, 749 N.E.2d 496, 509 (Ind. 2001) (Sullivan, J., concurring in result). The petitioner must do more than simply allege that a plea would not have been entered. Id. at 507. Where the alleged error is one that would have affected a defense or is related to a failure to mitigate a penalty, the petitioner must show that there would have been a reasonable probability of success at trial. Id. at 503, 507. Where the alleged error is counsel's omission or misdescription of penal consequences that is relevant to both a plea and a conviction at trial, however, the bar is somewhat lower. In those cases, the petitioner must allege "'special circumstances' or . . . 'objective facts' supporting the conclusion that the decision to plead guilty was driven by the erroneous advice." Id. at 507 (citations omitted).

Finally, we note that the two prongs of the Strickland test are separate and independent inquiries. Therefore, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, we may determine the prejudice prong first without inquiring into whether counsel's performance was adequate. Thacker, 715 N.E.2d at 1284.

## II. Ineffective Assistance of Trial Counsel

Fields argues that his trial counsel failed to provide him with effective assistance in that counsel wrongly advised him as to the benefits of his plea agreement. Fields argues that, had he gone to trial, he could not have been convicted of count V, aggravated battery, or count VI, battery, on double jeopardy grounds; Fields further argues that even if convicted of counts V and VI his sentence would not have been any greater than the 105-year sentence he is currently serving. He argues that he therefore received no benefit from his plea and was ineffectively advised by his trial counsel.

Fields first argues that double jeopardy would have barred convictions for counts V and VI—which were dropped under his plea agreement—had he gone to trial. Fields contends that because injuries to Mr. Pohlgeers underlie both the aggravated battery of count V and the serious bodily injury that elevated the attempted robbery charge to a Class A felony, he could not have been convicted of both counts. Similarly, he argues that because injuries to Mrs. Pohlgeers underlie the battery of count VI and the injury that elevated the burglary charge to a Class A felony, he could not have been convicted of both of those charges.[1] The State counters that both of the Pohlgeerses sustained multiple serious injuries such that they could have provided the factual basis for separate counts.

Our supreme court has concluded that two offenses are the same offense for double jeopardy purposes if, "with respect to _either_ the statutory elements of the challenged crimes _or_ the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original). In analyzing the statutory elements, the court looked to both the statute and the offense as charged. Id. at 51-52. In our current case, the robbery statute applies to

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
> (1) by using or threatening the use of force on any person; or
> (2) by putting any person in fear;
> . . . . However, the offense is . . . a Class A felony if it results in serious bodily injury to any person other than a defendant.

---

[1] He also argues that he could not have been convicted of count VI because he did not hit Mrs. Pohlgeers, and for support he cites to the facts in our earlier opinion. However, the record—both the factual basis supplied by the State at his plea hearing, as well as the testimony of a detective at his original sentencing—indicate otherwise. Moreover, we were not analyzing counts V or VI in either of our earlier opinions.

Ind. Code § 35-42-5-1.[2]  An amended charging information alleged that Fields, while acting with the culpability required for robbery, took a substantial step toward commission of the crime when he:

> did knowingly attempt to take property from the person of Larry Pohlgeers, by using the use of force on Larry Pohlgeers and in so doing struck Larry Pohlgeers with a pipe and searched a dresser drawer looking for property of Pohlgeers and said acts resulted in serious bodily injury to Larry Pohlgeers, to-wit: pain, multiple contusions, and/or lacerations.

Exhibits at 11.[3]  The statute for the dropped charge in count V, aggravated battery, requires that a person "knowingly or intentionally inflict[] injury on a person that creates a substantial risk of death or causes:  (1) serious permanent disfigurement; [or] (2) protracted loss or impairment of the function of a bodily member or organ . . . ."  Ind. Code § 35-42-2-1.5.  The amended charging information alleged that Fields "did knowingly inflict injury on a person, to wit: repeatedly struck Larry Pohlgeers in the head with a pipe, that created a substantial risk of death and/or caused serious permanent disfigurement to Larry Pohlgeers."  Exh. at 12.  At the statutory elements level therefore, attempted robbery and aggravated battery are not the same offense, in that aggravated battery requires that the injury be inflicted knowingly; and in this particular case there were enough injuries sustained that the State could hypothetically have used different injuries to support the two different charges.  See Richardson, 717 N.E.2d at 51 ("Although the State may choose to do so, it is not required to include detailed factual allegations in the charging instrument.") (emphasis in original).  A similar analysis leads

---

[2]  Fields was charged with attempted robbery.  Our attempt statute provides that an attempt to commit a crime occurs when a person, "acting with the culpability required for commission of the crime . . . engages in conduct that constitutes a substantial step toward commission of the crime.  An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted."  Ind. Code § 35-41-5-1.

[3]  The record does not contain the original information, but only an amended information to which the State objected at the post-conviction relief hearing because it was uncertified.

to the conclusion that count III, burglary, and count VI, battery, are not the "same offense" under a statutory elements analysis.

The heart of Field's argument goes to the actual evidence test. Fields argues that he "did not commit 'multiple acts of violence' against Larry," but rather "struck Larry multiple times in one act" and therefore the "single act" could not form the basis for both counts I and V. Reply Brief of Appellant at 3. However, under the actual evidence test, "the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts." Richardson, 717 N.E.2d at 53. Here, there was no trial and thus no actual evidence presented. We cannot speculate as to what evidence might have been introduced had there been a trial. Without a trial, the record is too thin to determine how protracted the beating may have been, which injuries were sustained when and how, and in essence whether the evidence would be too overlapping to sustain the dismissed counts.

Fields also contends that even if he were convicted of counts V and VI, he could not have been sentenced to additional consecutive time under Indiana Code section 35-50-1-2, which addresses consecutive and concurrent sentences. However, count V, aggravated battery, is listed as a "crime of violence" under Indiana Code section 35-50-1-2(a) and thus is exempt from the statutory cap on consecutive sentences. Had Fields been convicted of count V, he could have been sentenced up to an additional twenty consecutive years. See Ind. Code § 35-50-2-5 (sentencing range for Class B felonies).

At the post-conviction relief hearing, Fields's trial attorney, Frank Cardis, testified about the advice he gave Fields regarding the plea agreement. Cardis testified that at the time they were facing trial, Fields had confessed his involvement to the police, had taken

the police to recover evidence against him, each of his co-defendants intended to implicate Fields, the victims were ready to testify against him, and if the case had gone to trial he believed Fields would have been found guilty. He further testified that accepting the plea offer would open up several possible mitigating factors that would not have been available had Fields been found guilty following a trial, such as consideration of the acceptance of a plea, Fields's remorse, and Fields's assistance of the police. Because of the overwhelming evidence of Fields's guilt, Cardis believed that his best option was to accept the plea agreement. Cardis testified that he did originally believe that Fields's maximum sentence would be 150 years if he accepted the plea offer. The State pointed out at the hearing that, in fact, the trial court also believed the maximum was 150 years as that is what he was sentenced to prior to appeal. Cardis agreed that it was a somewhat complex question of law as to what Fields's maximum sentence might be. Overall, his strategy was that Fields would be better positioned to argue for a lesser sentence if he accepted the plea agreement.

Given all of the above, we cannot say that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Fields has not demonstrated a reasonable probability that the hypothetical reasonable defendant would not have pleaded guilty and would have elected to go to trial if differently advised, and we cannot say that Fields was denied the effective assistance of his trial counsel. Even though Cardis was wrong about the 150 year maximum sentence, Fields received the reduced sentence on appeal, and maintained dismissal of counts V and VI and the ability to argue for mitigation. Had Fields gone to trial, even if he had not ultimately been convicted on counts V and VI, his strategy for leniency would have been limited.

## Conclusion

Concluding that Fields was not denied the effective assistance of his trial counsel, we affirm.

Affirmed.

RILEY, J., and KIRSCH, J., concur.