Michael GREEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 15A01–0508–CR–373.

Court of Appeals of Indiana.

July 20, 2006.

Lorinda Meier Youngcourt, Huron, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, for Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Upon a guilty plea, Appellant, Michael Green, was convicted of Attempted Rob-

bery as a Class A felony[1] (Count I), Conspiracy to Commit Robbery as a Class A felony[2] (Count II), Burglary as a Class A felony[3] (Count III), and Conspiracy to Commit Burglary as a Class A felony[4] (Count IV). The trial court sentenced him to fifty years for his attempted robbery conviction, fifty years for his burglary conviction, and fifty years for his conspiracy to commit burglary conviction.[5] The sentences were to be served consecutively. Upon appeal, Green claims that his sentence is in violation of Indiana Code § 35–50–1–2 (Burns Code Ed. Supp.2004), that the factual basis for the plea supports a conviction for conspiracy to commit burglary as a Class B felony rather than as a Class A felony, and that the court used improper aggravators and failed to consider certain mitigators in enhancing his sentence.

We affirm in part, reverse in part, and remand.

In *Fields v. State,* 825 N.E.2d 841, 843 (Ind.Ct.App.2005), *trans. denied,* a case involving Green's co-defendant, we dealt with the facts surrounding the case at hand as follows:

"Prior to August 2, 2002, Fields, Michael Green, Nathan Haas, and Brian Allen agreed to steal money they believed they would find in the home of Larry and Judy Pohlgeers. Green and Haas had allegedly burglarized the same house in 2000. On the evening of August 5, 2002, Fields and Green broke into the house while the other two stood watch outside. Fields beat Mr. Pohl-

---

1. Ind.Code §§ 35–42–5–1; 35–41–5–1; 35–41–2–4 (Burns Code Ed. Repl.2004).

2. Ind.Code §§ 35–42–5–1; 35–41–5–2 (Burns Code Ed. Repl.2004).

3. Ind.Code §§ 35–43–2–1(2) (Burns Code Ed. Repl.2004); 35–41–2–4.

4. Ind.Code §§ 35–43–2–1(2); 35–41–5–2.

5. At sentencing, the court "merged" the robbery conspiracy with the attempted robbery and did not sentence Green upon the conspiracy to commit robbery conviction. "Merger" is inadequate, and we direct the trial court to vacate the robbery conspiracy conviction. *Kochersperger v. State,* 725 N.E.2d 918, 925–26 (Ind.Ct.App.2000); *Jones v. State,* 807 N.E.2d 58, 67–68 (Ind.Ct.App.2004), *trans. denied.*

geers with a bicycle seat post and Green beat Mrs. Pohlgeers with a pipe."

The specific factual bases which were entered during Green's plea agreement hearing indicated that, with respect to Count I, attempted robbery, on August 5, 2002, Green aided David Fields, who knowingly attempted to take property from one Larry Pohlgeers by searching his dresser drawer and striking him with a pipe resulting in serious bodily injury to Pohlgeers including pain, lacerations, and contusions. With respect to Count II, conspiracy to commit robbery, the factual basis indicated that on August 5, 2002, Green agreed with Fields and others to commit a robbery and that Fields committed the overt act of searching a dresser drawer and striking Mr. Pohlgeers, resulting in serious bodily injury to Pohlgeers in furtherance of the agreement.[6] With respect to Count III, burglary, on August 5, 2002, the factual basis stated that Green broke and entered the residence of Judith Pohlgeers with the intent to commit the felony of theft which resulted in the bodily injury of pain, multiple contusions and lacerations to Mrs. Pohlgeers. With respect to Count IV, conspiracy to commit burglary, the factual basis indicated that between August 2 and August 5, 2002, Green agreed with Fields and others to commit the felony of burglary, which resulted in bodily injury, and performed the overt act of "scop[ing]" out the Pohlgeerses' residence on August 2 and August 4, and on August 5, by Fields's bringing a pipe and/or hatchet to the Pohlgeerses' residence and by Green's and Fields's breaking and entering the Pohlgeerses' residence with the intent to commit a theft there which resulted in bodily injury to Mrs. Pohlgeers. Tr. at 12.

On December 16, 2002, Green was charged in an amended information with attempted robbery, conspiracy to commit robbery, burglary, and conspiracy to commit burglary, all as Class A felonies. He was further charged with aggravated battery and battery with a deadly weapon. At a September 25, 2003 guilty plea hearing, Green pleaded guilty to attempted robbery, conspiracy to commit robbery, burglary, and conspiracy to commit burglary, all as Class A felonies.

During a December 19, 2003 sentencing hearing, the trial court found the following as aggravators: the age of the victims; the permanent injuries and disfigurement suffered by the victims; Green's prior criminal record; the risk of Green committing further criminal conduct; Green's lack of remorse; and the facts surrounding the commission of the crime itself, which involved "[p]lanning and scheming, lying in wait," aborting preliminary attempts, using disguises and latex gloves, and preparing weapons. Tr. at 165. In discussing mitigators, the court, in rejecting as a mitigator the claim that Green was high on drugs or alcohol during the commission of the crime, found that the crime was planned over several days. The court found as the only mitigator that there would be hardship for Green and his children. The court concluded that "the aggravators strongly outweigh that single mitigator." Tr. at 166.

In explaining its reasons not to suspend large portions of Green's sentence, the court found that Green had had the opportunity to "back out" of the crime. Tr. at 166. The court noted that Green's group had aborted its first attempt but had come back a few nights later. The court considered, as further reasoning for its decision not to suspend a large part of Green's sentence, the facts that the victims had extended Green mercy in the past and that Green had provided information about where the victims kept their money to the other co-defendants, enabling them to choose these victims for their crime.

---

**6.** Count II is only peripherally involved in this appeal. *See* footnote 5, *supra*.

In sentencing Green the court determined that Indiana Code § 35–41–5–3 (Burns Code Ed. Repl.2004) applied to the attempted robbery and conspiracy to commit robbery charges, Counts I and II, so he "merged" Count II into Count I for purposes of Green's sentence.[7] The court further determined that Green's convictions for burglary and conspiracy to commit burglary, Counts III and IV, occurred independently on different dates, and thus were not subject to I.C. § 35–50–1–2. The court then sentenced Green to a fifty-year sentence on Count I, attempted robbery, another fifty-year sentence on Count III, burglary, and a third fifty-year sentence on Count IV, conspiracy to commit burglary. The court suspended fifteen years of each fifty-year sentence. It further ordered that the sentences run consecutively, for an aggregate sentence of 150 years with forty-five years suspended.

On January 6, 2004, Green filed a pro se Motion for Withdrawal of Plea. On July 14, 2005, Green, by counsel, filed a Verified Petition for Permission to File Belated Notice of Appeal. In that petition Green indicated that the court had appointed counsel and granted his motion to dismiss his previous Motion for Withdrawal of Plea. On July 15, 2005, Green filed a belated notice of appeal under Indiana Post–Conviction Rule 2(1).

Upon appeal, Green raises several challenges. He first argues that his sentence violates Indiana Code § 35–50–1–2 because Count I, attempted robbery, and Count IV, conspiracy to commit burglary, were a single episode of criminal conduct and therefore may not result in consecutive sentences. Green concedes that, as our court stated in *Fields*, Count III, burglary as a Class A or B felony, is a crime of violence which is not subject to the terms of Indiana Code § 35–50–1–2. *See* 825 N.E.2d at 844.

■ A person who pleads guilty is not permitted to challenge the propriety of that conviction upon direct appeal. *Collins v. State*, 817 N.E.2d 230, 231 (Ind. 2004). A person who pleads guilty may only challenge the conviction through a petition for post-conviction relief. *Kling v. State*, 837 N.E.2d 502, 504 (Ind.2005). One of the things a person gives up by pleading guilty is the right to a direct appeal. Id. (citing *Tumulty v. State*, 666 N.E.2d 394, 395 (Ind.1996)). However, a person who pleads guilty is entitled to contest on direct appeal the merits of a trial court's sentencing discretion, i.e., where the sentence is not fixed by the plea agreement. *Collins*, 817 N.E.2d at 231. If, in a guilty plea situation, there is no agreement between the defendant and the State as to the sentence to be imposed, the sentence may, indeed must, be challenged (if at all) by means of a direct appeal. *Kling*, 837 N.E.2d at 504. Sentencing is generally left to the discretion of the trial court, but we are duty-bound to correct sentences that violate the trial court's statutory authority. *Monyhan v. State*, 780 N.E.2d 1187, 1189 (Ind.Ct.App.2003).

■ Indiana Code § 35–50–1–2, in pertinent part, provides the following:

"The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive [8] sentence for a felony which

---

7. *See* footnote 5, *supra*. Under I.C. § 35–41–5–3, a person may not be convicted of both a conspiracy and an attempt with respect to the same underlying crime.

8. The amended version of this statute refer-

is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted."

An "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35–50–1–2(b). An episode means an occurrence or connected series of occurrences and developments that may be viewed as distinctive and apart although part of a larger or more comprehensive series. *Cole v. State,* N850 N.E.2d 417 (Ind.Ct.App., 2006) (citing *Johnican v. State,* 804 N.E.2d 211, 217 (Ind.Ct.App.2004)).

In support of his claim, Green cites to *Fields,* in which a panel of our court held, with respect to one of Green's co-defendants who had pleaded guilty to the same crimes arising out of the same circumstances, that the conspiracy to commit burglary and the attempted robbery that took place as the conspiracy was carried out amounted to a single episode of criminal conduct. 825 N.E.2d at 846–47. The State argues that, as the charging information indicates, the crimes of attempted robbery and conspiracy to commit burglary occurred on different dates and had different victims, with the attempted robbery occurring on August 5 and victimizing Mr. Pohlgeers, and the conspiracy to commit burglary occurring between August 2 and August 5 with the focus upon Mrs. Pohlgeers's residence. The State further points out, as evidence that the attempted robbery and the conspiracy to commit burglary were not part of the same episode of criminal conduct, that Green had wished to commit the offenses on August 3 but that the others had outvoted him, and the plan for August 3 had therefore been aborted.

The charging information alleges that, with respect to the attempted robbery charge, on August 5, 2002, Green knowingly attempted to take property from Mr. Pohlgeers by aiding Fields, who struck Pohlgeers with a pipe and searched his dresser drawer, resulting in serious bodily injury to Mr. Pohlgeers. The charging information also alleges, with respect to the conspiracy to commit burglary charge, that Green, with the intent to commit a burglary causing bodily injury, agreed with Fields and others to commit the burglary and committed the overt acts of (1) "scop[ing] out" the Pohlgeerses' residence on August 2 and 4, (2) carrying a pipe and/or hatchet,[9] and (3) breaking and entering the Pohlgeerses' residence with the intent to commit theft which resulted in bodily injury to Mrs. Pohlgeers. App. at 318

In *Fields* the court determined that the crimes of conspiracy to commit burglary and attempted robbery were a "single episode" of criminal conduct. 825 N.E.2d at 846–47. That determination was made based upon our conclusion that when defendant Fields broke into the victims' home, he was not entering into a second crime " 'with a fresh purpose,' " nor did that act reflect " 'a subsequent conscious decision to commit another crime.' " *Id.* (quoting *United States v. Thomas,* 211 F.3d 316, 321 (6th Cir.2000)). Upon a

---

ences the "advisory" sentence rather than the "presumptive" sentence, reflecting the changes made to the Indiana sentencing statutes in response to *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied. See* Ind.Code § 35–50–1–2 (Burns Code Ed. Supp.2005). Since Green committed the crimes in question and pleaded guilty thereto before the effective date of the amendments, we apply the version of the statute then in effect and use the term "presumptive sentence." *See Weaver v. State,* 845 N.E.2d 1066, 1071–72 (Ind.Ct.App.2006), *trans. denied.*

**9.** Fields, not Green, is alleged to have carried the pipe and/or hatchet. A person may be convicted of conspiracy whether it is he or another of his co-conspirators who performs the overt act. *See* I.C. § 35–41–5–2.

review of the record we are similarly convinced that Green's attempted robbery of the Pohlgeerses was part of his conspiracy to commit burglary and did not occur out of a newly formulated, fresh purpose after the conspiracy to commit burglary was carried out. The facts that there were aborted attempts, that the attempted robbery and conspiracy occurred on different days, and that Mr. and Mrs. Pohlgeers were both victims, which the State argues support its claim that these were separate episodes of criminal conduct, just as easily support the conclusion that the attempted robbery and conspiracy to commit burglary were part and parcel of one elaborate plan which nevertheless had one general objective.

■ Indeed, it is clear from the record that attempted robbery was always the focus of the conspiracy to commit the burglary and the burglary itself. As the facts and charging informations indicate, the group's purpose in agreeing to burglarize the Pohlgeerses' home was to take their possessions by force. In breaking into the Pohlgeerses' home, the conspirators were armed with a pipe and/or hatchet, which they proceeded to use to beat Mr. Pohlgeers. To be sure, regardless of the fact that he could not be convicted of conspiracy to commit robbery,[10] Green pleaded guilty to the crime, admitting the facts that he had agreed to rob Mr. Pohlgeers and that one of the conspirators had performed the overt act of striking Mr. Pohlgeers and searching his dresser drawer for his property. The conspirators scoped out the Pohlgeerses' home for two to three days prior to burglarizing it and likely would have known that Mr. Pohlgeers, who was reportedly watching television and confined to a chair due to a hip replacement, was at home. Further, there was testimony showing that the men, although armed with a pipe and/or hatchet, shoved in the Pohlgeerses' door, and that the weapon/s were used to subdue their victims rather than to break into the house. The evidence demonstrates that Green, in attempting to rob the Pohlgeerses, was carrying out the intentions and purposes he had formulated while staking out their home and planning with Fields and others to break into it.[11] We therefore conclude Green's crimes of conspiracy to commit burglary and attempted robbery were a "single episode" of criminal conduct. As this court did in *Fields*, we instruct the trial court to resentence Green, consistent with Indiana Code § 35–50–1–2, to not more than 105 years, representing a maximum of fifty years for the burglary and a maximum of fifty-five years for the single episode of criminal conduct consisting of the attempted robbery and conspiracy to commit burglary convictions. *See Fields*, 825 N.E.2d at 847. We further instruct the trial court to vacate Green's conviction for conspiracy to commit robbery pursuant to the rule in I.C. § 35–41–5–3 that a defendant may not be convicted of both an attempt and a conspiracy with respect to the same underlying crime. *See* footnotes 5 and 7, *supra*.

■ Green also claims upon appeal that the factual basis supports his conviction for conspiracy to commit burglary as a

---

**10.** Green pleaded guilty to both conspiracy to commit robbery and attempted robbery. As noted earlier, under I.C. § 35–41–5–3, a person may not be convicted of both a conspiracy and an attempt with respect to the same underlying crime. *See* footnotes 5 and 7, *supra*.

**11.** Of course, in a scenario where a person conspires to commit a burglary with the intent to carry out the felony of theft and then, upon burglarizing a structure, subsequently decides to attempt to commit robbery, such person is not entitled to the protections of I.C. § 35–50–1–2 upon the basis that the conspiracy to commit burglary and attempted robbery are a single episode of criminal conduct.

Class B felony only, not as the Class A felony to which he pleaded. In *Fields,* the panel of our court found *sua sponte* that there was no evidence of specific intent to cause the victims bodily injury, and therefore Fields's conviction for conspiracy to commit burglary could only be sustained as a Class B felony. 825 N.E.2d at 849. Green relies on *Fields* in requesting similar relief in his case. We acknowledge the panel's holding in *Fields,* but we are not inclined to make a similar *sua sponte* finding that Green's conviction for conspiracy to commit burglary as a Class A felony was unsupported by the evidence. As we stated earlier, a person who pleads guilty is not permitted to challenge the propriety of that conviction upon direct appeal. *Collins,* 817 N.E.2d at 231. We treat Green's belated appeal as if it were a direct appeal under Post–Conviction Rule 2(1). *See Sullivan v. State,* 836 N.E.2d 1031, 1035 (Ind. Ct.App.2005). Accordingly, we decline to address, in this direct appeal, the propriety of Green's conviction for conspiracy to commit burglary as a Class A felony.

■ Green's third claim upon appeal is that his sentence is unconstitutional under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.* The State concedes that Green, who was sentenced on December 19, 2003, and whose belated appeal we are addressing now, has not waived his *Blakely* claim but argues on the merits that the trial court did not use improper factors upon sentencing Green because all of the factors it considered were either admitted by Green or involved his criminal history.

Notwithstanding the State's concession, we address Green's ability to bring this claim. Green committed the instant offenses in August of 2002 and was sentenced December 19, 2003. *Blakely* was decided on June 24, 2004. Our Supreme Court stated in *Smylie v. State,* 823 N.E.2d 679, 688–91 (Ind.2005), that *Blakely* applied retroactively to all cases on direct review at the time *Blakely* was announced. Green filed his belated notice of appeal pursuant to Indiana Post–Conviction Rule 2(1) on July 15, 2005, and it was granted on the same day. Post–Conviction Rule 2(1) provides that a belated notice of appeal permitted by the trial court "shall be treated for all purposes as if filed within the prescribed period." According to our calculations, if Green had filed a timely appeal following his December 19, 2003 sentencing, his appeal would have been pending at the time *Blakely* was filed in June of 2004. We further note that in *Gutermuth v. State,* 848 N.E.2d 716, 730 (Ind.Ct.App.2006), *trans. pending,* a panel of our court specifically held that *Blakely* applies retroactively to appeals raised pursuant to Indiana Post–Conviction Rule 2(1). The panel in *Gutermuth* held that *Blakely* applies retroactively to appeals raised pursuant to Post–Conviction Rule 2(1) in cases where the availability of appeal via Post–Conviction Rule 2(1) had not been exhausted when *Blakely* was announced. 848 N.E.2d at 726. As in *Gutermuth,* Green's case was not yet final at the time *Blakely* was announced, as his sentencing occurred December 19, 2003, and his belated appeal pursuant to Post–Conviction Rule 2(1) was filed and granted on July 15, 2005. Under *Smylie* and *Gutermuth,* therefore, Green is entitled to bring his *Blakely* challenge upon appeal.[12]

---

**12.** We recognize that, while not the case here because Green was sentenced only six months prior to *Blakely,* the holding in *Gutermuth* provides for *Blakely* protections for defendants filing P–C.R. 2 belated appeals years following their convictions when they would not have had *Blakely* protections had they filed a timely appeal under the Indiana Appellate Rules. However, consistent with our treatment of belated appeals pursuant to P–C.R. 2 as if they were filed within the pre-

In *Blakely,* the United States Supreme Court applied the rule set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), wherein the court stated, " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.' " 542 U.S. at 301, 124 S.Ct. 2531. The *Blakely* Court, relying upon the *Apprendi* rule, held that the sentencing scheme at issue violated the petitioner's Sixth Amendment right to a trial by jury. 542 U.S. at 313, 124 S.Ct. 2531. The Court noted that precedent made clear that the " 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id.* at 303, 124 S.Ct. 2531 (emphasis in original). The Court further clarified, stating that the relevant statutory maximum for *Apprendi* purposes "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303–04, 124 S.Ct. 2531 (emphasis in original). The *Blakely* Court also held that when a defendant enters a guilty plea, the State is free to seek judicial enhancements so long as the defendant either stipulates to the relevant facts or consents to

judicial factfinding. *Id.* at 310, 124 S.Ct. 2531.

Green challenges six aggravating factors which the trial court considered in enhancing his sentence: (1) the victims' age; (2) the victims' permanent injuries and disfigurement; (3) Green's prior criminal record; (4) Green's risk of recidivism, especially in light of his previous theft from the same victims; (5) Green's lack of remorse; and (6) the manner in which the crime was committed. Green argues that his rights under *Blakely* were violated because the trial court found these aggravators in spite of the fact that he neither admitted them nor did a jury find them beyond a reasonable doubt. Green further claims that he did not stipulate to these aggravators in his plea agreement or consent to judicial factfinding.

■■■ We address each challenged aggravator in turn. Green claims that the court improperly considered the age of the victims as an aggravator, as the age of the victims was never properly established pursuant to *Blakely.* In fact, Green admitted in his pre-sentence memorandum to the court that a statutory aggravating circumstance which Green believed to be relevant to sentencing was that "the victims were at least 65 years of age." [13] App. at 401. The fact that the victims were at the advanced age of 65 or older, as Green

scribed period, our court has recently determined that the application of the April 25, 2005 sentencing statutes, which were amended for purposes of avoiding the sentencing problems created by *Blakely,* to persons convicted before the amendments took effect would violate the constitutional protections against *ex post facto* laws. *See Weaver v. State,* 845 N.E.2d 1066, 1070–72 (Ind.Ct.App. 2006), *trans. denied,* Whether substantive protections similarly compel the retroactive application of the *Blakely* standard we do not decide, but we do note, with respect to claims specifically brought under P–C.R. 2, that we have determined in the past that the Indiana

Supreme Court's rule precluding retroactive application of new criminal rules to collateral proceedings does not apply to direct appeals, including those involving *Blakely* claims. *See Sullivan v. State,* 836 N.E.2d 1031, 1035 (Ind. Ct.App.2005).

13. The fact that Green's Pre–Sentence Memorandum was submitted by his attorney rather than by Green himself does not affect its status as an admission by Green. *See Trusley v. State,* 829 N.E.2d 923, 925–26 (Ind.2005) (holding that a statement by counsel during a plea hearing was sufficient to constitute an admission by the defendant).

admitted, was properly considered an aggravator. We deny Green's claim of error based upon the trial court's consideration of this factor.

■ Green next challenges the court's consideration of the victims' permanent injuries and disfigurement as aggravators. He concedes that he admitted, in pleading guilty to attempted robbery and conspiracy to commit robbery as Class A felonies, that the victims suffered serious bodily injury. "Serious bodily injury" is defined under Indiana Code § 35–41–1–25 (Burns Code Ed. Repl.2004) as bodily injury creating a substantial risk of death or causing "serious permanent disfigurement" or "permanent or protracted loss or impairment of the function of a bodily member or organ." Green claims, however, that the trial court may not use facts which were admitted for purposes of establishing material elements of his offenses also as aggravating circumstances for purposes of sentencing him. Insofar as the facts of permanent injury and disfigurement were used as an aggravator for the attempted robbery conviction, we agree. A trial court may not use a factor constituting a material element of an offense as an aggravating circumstance. *Henderson v. State*, 769 N.E.2d 172, 180 (Ind.2002). "Serious bodily injury," which encompasses both permanent injury and disfigurement, was an essential element in Green's guilty plea and conviction for attempted robbery.[14] Serious bodily injury was not an alleged element of Green's convictions

for burglary (Count III) and conspiracy to commit burglary (Count IV), however.[15] As charged, each of those counts alleged bodily injury only. In sentencing Green the court did not specify which convictions for which the permanent injuries and disfigurement served as aggravators. Accordingly, to the extent the trial court considered the victims' permanent injuries and disfigurement as aggravators for the attempted robbery charge, we conclude it erred, as such was necessary to establish Green's conviction on that count.

■ Green's third challenge is to the court's use of his prior criminal record as an aggravator. In sentencing Green the court stated,

> "The Court also finds as an aggravator that Mr. Green has a prior criminal record which includes an open flask violation in Hamilton County, Ohio and a domestic violence conviction in Hamilton County, Ohio." Tr. at 164.

Green's pre-sentence investigation report ("PSI") indicated that he had a criminal history consisting of a State of Ohio "conviction" on December 28, 1996 for possession of open flask,[16] an arrest for battery on March 27, 2000 for which he received a diversion, and a State of Ohio domestic violence conviction on May 10, 2001 for which he received a thirty-day suspended sentence and one year of probation. In a pre-sentence memorandum, Green objected to the PSI's statement of his criminal history, claiming he was not convicted for

14. Although serious bodily injury is an element of conspiracy to commit robbery, to which Green pleaded guilty, he was not—or should not have been—convicted of this count under I.C. § 35–41–5–3. As we are vacating Green's conviction for conspiracy to commit robbery, we do not address the merits of the aggravators pertaining to this count.

15. Burglary and conspiracy to commit burglary as Class A felonies under I.C. § 35–43–

2–1 only require a showing of "bodily injury," though they may also be established by a showing of "serious bodily injury."

16. Although the PSI lists this as a "conviction" in Green's "adult history," the chronological case summary lists Green's date of birth as January 30, 1982. Thus, he would have been only fourteen years old at the time of this possession of open flask violation. *See* App. 1, 382.

the open flask charge and was charged with disorderly conduct rather than with domestic violence.[17] During sentencing Green's attorney stated the following:

"He has a criminal history but it is not extensive and it is not a violent history.... The ... incidents he was involved in, it wasn't a domestic violence. It was, in fact, a disorderly conduct and it was not a violent crime. Nothing here from his family or his teacher shows that he has a sense of violence. So I don't think his criminal history is something that should aggravate the terms of the sentence." Tr. at 127–28.

Green argues that his criminal history should not have been used as an aggravator because it was inaccurate. He further argues that his criminal history is nonviolent and at least one of his two offenses is too far removed from the instant offenses to be relevant.

In reviewing the PSI, we note that Green's first listed violation in his "adult history" is for possession of an open flask,[18] which occurred more than five years before the instant offenses, when he would have been approximately fourteen years old. Green's second listed offense is for a battery which was subsequently dismissed following a pre-trial diversion. His third offense is for domestic violence, which he contested as inaccurate, both in a pre-trial memorandum and during sentencing. In *Carmona v. State*, 827 N.E.2d 588, 599 (Ind.Ct.App.2005), we held that where a defendant vigorously contests his criminal history, and the criminal history is highly relevant to his sentence, it is incumbent upon the State to produce some affirmative evidence, whether in the form of docket sheets, certified copies of judgments of conviction, or affidavits from appropriate officials, to support a criminal history alleged in a PSI. In *Carmona*, the defendant admitted two of the items in his criminal history but "vigorously asserted" during the first sentencing hearing that several charges which were apparently unaccompanied by case numbers were not in fact his. 827 N.E.2d at 597–98. The court continued the sentencing hearing, and the State prepared an updated PSI which still attributed the disputed criminal history to the defendant. *Id.* During the rescheduled sentencing hearing, the defendant's attorney outlined the unsuccessful steps he had taken in an attempt to verify or disprove the contested charges, and the defendant continued to dispute many of the cases listed in his criminal history. *Id.* at 598. Our court recognized that the Indiana Code does not allocate burdens of proof with respect to the production of evidence of persuasion for purposes of criminal sentencing. *Id.* at 599. We noted, however, that we were "hard-pressed to see how [the defendant] could have proven a negative" and ultimately concluded that where a defendant "vigorously contests" his criminal history, and that criminal history is highly relevant to his sentence, it is incumbent upon the State to produce affirmative evidence to support a

---

**17.** The Ohio appellate courts are currently divided on the issue of whether disorderly conduct is a lesser included offense of domestic violence. *See State v. Blasdell*, 155 Ohio App.3d 423, 801 N.E.2d 853, 856 (2003). In any event, "domestic violence" involves knowingly causing or attempting to cause physical harm to a family member while "disorderly conduct" involves recklessly causing inconvenience, annoyance, or alarm to another. *Id.* at 857. The court in *Blasdell* noted that an offender must act knowingly to commit domestic violence but only recklessly to commit disorderly conduct. *Id.* at 856. Disorderly conduct carries with it a lesser penalty than does domestic violence. *Id.*

**18.** The Ohio courts have characterized possession of an open flask as a "minor misdemeanor." *State v. Coleman*, 108 Ohio Misc.2d 48, 739 N.E.2d 419, 420 (2000).

criminal history alleged in a PSI. *Id.* at 599.

Here, unlike in *Carmona*, Green challenged his past conviction for domestic violence, a specific case identified by a specific case number, by making the unsubstantiated assertion that it was in fact a conviction for nonviolent disorderly conduct. The State did not place Green in the difficult position it placed the *Carmona* defendant in, namely having to prove a crime did not happen in order for it to be removed from his record. As we recognized in *Carmona*, a defendant ought not have to prove a negative. Here, in contrast, Green challenged a specific, identifiable case by claiming it was incorrectly reported. He apparently was in possession of the information indicating the error, and in alleging this error, he made no efforts beyond alleging there was error to demonstrate that the PSI was inaccurate.

■ Although it does not appear that Green "vigorously contested" his criminal history, our confidence in the court's use of this criminal history as an aggravator is nevertheless undermined by the fact that, unlike in *Carmona* where the defendant at least admitted part of his criminal history, here Green's entire criminal history was problematic. Green's criminal history consisted of two offenses from Ohio, one of which was listed as part of his adult history but occurred more than five years prior to the instant offense when Green would have been fourteen years of age,[19] and the other of which Green contested repeatedly as inaccurate, to no apparent response by the court. Beyond that, Green has no additional criminal history. We have before concluded that a misdemeanor battery conviction nearly five years before the instant offenses is insufficient in itself to enhance the defendant's sentence. *Traylor v. State*, 817 N.E.2d 611, 622 (Ind.Ct. App.2004), *trans. denied; see Haas v. State*, 849 N.E.2d 550, 555 (Ind., 2006) (assigning "modest weight" to prior minor juvenile adjudications).[20] We are not convinced that buttressing Green's misdemeanor possession violation with the Ohio domestic violence conviction, which Green repeatedly challenged, makes Green's criminal history in the PSI reliable for purposes of aggravating his sentence. We therefore conclude the court erred in considering Green's criminal history as an aggravator and direct the court upon remand, to consider Green's criminal history by assigning modest weight, if any, to his possession violation and only upon reviewing the domestic violence conviction in light of his allegation of error.

■ The fourth aggravating factor Green challenges is the court's consideration of his risk of future criminal conduct. In considering this factor the court stated the following:

"The Court finds as an aggravator the risk of further criminal conduct occurring and the fact that this particular defendant had committed a previous theft, well, a previous theft at the residence of the Pohlgeers and that the Pohlgeers had extended mercy to Mr. Green when he was caught doing that the first time that it occurred several years ago and his response to the mercy that the Pohlgeers extended to him was to commit the same crime again several years later as well as pass on information to the codefendants that assisted in the crime as far as identifying the Pohlgeers as people that could be victimized

---

19. In assessing aggravators, a trial court may consider a defendant's juvenile record. *Haas v. State*, 849 N.E.2d 550, 555 (Ind., 2006).

20. Haas participated with Green in the incident giving rise to the convictions at issue. Haas similarly contested his aggravators upon appeal.

and identifying to the other co-defendants where the Pohlgeers kept the money in the household. He was knowledgeable of that, utilized that knowledge once before to commit the crime against the Pohlgeers and used that same information a second time and shared it with others. So there is a risk for further criminal activity occurring with this particular defendant." Tr. at 164–65.

There were several references throughout the sentencing hearing to an incident in 2000 where Green had allegedly burglarized the Pohlgeerses' house. Green was never convicted of any crime based upon that incident, and his criminal history makes no reference to it. However, during closing argument, defense counsel stated the following:

"We've addressed some of the, this incident that everyone's talking about in 2000, yeah, he was given a chance and he was dumb. He was dumb for not acting on it and he'd be the first to tell you that but there was no violence in that crime." Tr. at 127–28.

Based upon the record, the only incident defense counsel could have been referring to was the 2000 alleged burglary of the Pohlgeerses' residence by Green.

■ Our Supreme Court has recently stated that judicial statements characterized as aggravators, including a defendant's "risk to reoffend," are not always "facts" that need to be found beyond a reasonable doubt. *Haas*, at 553; *Neff v. State*, 849 N.E.2d 556, 560 (Ind., 2006). Instead, these statements " 'merely describe the moral or penal weight of actual facts.' " *Haas*, at 553 (quoting *Morgan v. State*, 829 N.E.2d 12, 17 (Ind.2005)). "Such statements may serve as valid and separate aggravators so long as they are '1) supported by facts otherwise admitted or found by a jury and 2) meant as ...

concise description[s] of what the underlying facts demonstrate and therefore rel[y] upon a legal determination otherwise reserved as a power of the judge.' " *Id.* (quoting *Morgan*, 829 N.E.2d at 18). However, such statements may not stand as separate aggravators when the factual basis that supports them also serves as an aggravator. *Neff*, at 559.

In determining whether the court's finding that Green had a risk of further criminal activity properly served as a valid and separate aggravator under the *Morgan* and *Haas* analysis, we note that, with respect to the first prong, defense counsel admitted that Green had committed the act in 2000.[21] With respect to the second prong, we recognize that while the 2000 incident would seem indicative of Green's risk to commit the offenses at issue, we are hesitant to agree that such crime further foreshadows an additional risk to re-offend. As the victims have moved from the site of the 2000 and instant offenses, the inside information Green believed he had obtained during the 2000 incident which led him to commit the instant offenses no longer serves him and would not seem to indicate his propensity to re-offend. Nevertheless, if the trial court upon remand makes the legal determination that the 2000 incident demonstrates Green is at risk to re-offend, such risk may serve as an aggravator because the admitted fact of the 2000 incident does not serve as a separate aggravator. In sum, while it is proper for the trial court to consider the 2000 incident in determining whether Green is at risk to re-offend and such may serve as an aggravator, in light of our above reservations, we direct the trial court to re-consider this aggravator upon remand.

■ Green further challenges the court's considering as an aggravator the

---

21. Under *Trusley*, 829 N.E.2d at 925–26, a statement by defense counsel during a plea

hearing is sufficient to constitute an admission by the defendant.

fact that he lacked remorse. During sentencing Green apologized to the Pohlgeerses and stated he was "deeply sorry" for all of their mental and physical anguish. Tr. at 109. In spite of this, the court found what it determined was Green's "lack of remorse" as an aggravator:

> "The Court also finds as an aggravator that there was a lack of remorse by this particular defendant. During his testimony he still denied involvement in the battery of the Pohlgeers even though Mr. and Mrs. Pohlgeers themselves took the stand and identified both Mr. Green and Mr. Fields as assailants and we hear from the victims themselves and yet Mr. Green still claims it wasn't him, that he was trying to protect Mrs. Pohlgeers. The Court feels that shows a lack of remorse so that is an aggravator...." Tr. at 165.

While Green stated during sentencing that he was remorseful, he also denied hitting Mrs. Pohlgeers, stated he tried only to hold her down and calm her, and indicated that he never wanted to commit the crimes at issue but was intimidated into doing so. The trial court, which had the ability to observe the defendant directly and listen to the tenor of his voice, was in the best position to determine the sincerity of his alleged remorseful statements. *Corralez v. State*, 815 N.E.2d 1023, 1025 (Ind.Ct.App.2004). While finding lack of remorse, whether as a specific aggravator or as a judicial statement describing the moral and penal weight to assign to underlying facts—facts which Green never admitted and were not found by a jury—, is impermissible as a separate aggravator under *Blakely*,[22] the trial court nevertheless was entitled to make legitimate obser-

vations regarding the credibility of Green's stated lack of remorse for purposes of making a valid commentary on the proceedings as a whole.

■ Green's final challenge to the aggravators is to the court's consideration of the nature and circumstances of the crimes as an aggravator. As in our assessment of Green's "risk to re-offend," we recognize that the "nature and circumstances" of a crime is not a separate aggravator but a broader statement which serves as a concise description of the facts related to the crime. *Haas*, at 553. In considering the "manner of committing the crime," the court stated the following:

> "Planning and scheming, lying in wait, prior attempts to commit this crime that were later aborted, using disguises to enter the home, hiding trace evidence by use of latex gloves, hiding trace evidence by using electrical tape on the weapons so that if there was any blood splatter the tape could be taken off and discarded and the weapons would still be clean and burning the clothes afterwards, all of the manner of the committing of the crime the Court finds as aggravators." Tr. at 165.

The State appears to argue that Green's admission to the crimes as testified to by Officer Main were adequate admissions to support their use as aggravators under *Blakely*. In the absence of any authority supporting such an interpretation, we do not read *Blakely* to permit the use of such hearsay "admissions" as aggravators, especially in light of the fact that Green's position in his pre-sentence memorandum and during sentencing was that he did not want to go through with the crimes and was intimidated by Fields into doing so.[23]

---

22. *See McGinity v. State*, 824 N.E.2d 784, 788 (Ind.Ct.App.2005), *trans. denied*.

23. The State further argues that any information in the PSI, including the attached proba-

ble cause affidavit, which was not challenged by Green qualifies as an admission. Our Supreme Court has disapproved of this reasoning, stating, "[U]sing a defendant's failure to object to a presentence report to establish an

The facts listed by the court indicating the nature and circumstances of the crime were not admissions by Green, nor were they found by a jury or otherwise properly considered as aggravators under *Blakely*.[24] Nevertheless, upon remand the court is entitled to consider those facts and circumstances of the crimes which were listed in the charging informations, to which Green admitted, as well as his admissions at the hearing, for purposes of determining whether such constitutes an aggravator. We note that, with respect to this determination in the context of the very crime at issue, our Supreme Court has stated that the acts of "scoping out" the Pohlgeerses' residence on two separate occasions and knowing that a weapon would be involved is adequate to support a conclusion that the crime was "heinous" in nature, and that such is a permissible aggravator. *Haas,* at 554–55.

■ Green's last argument upon appeal is that the court erred in failing to consider as mitigators his young age and the fact that he pleaded guilty. A trial court is not obliged to weigh or credit mitigating factors the way a defendant suggests. *Hedger v. State,* 824 N.E.2d 417, 420 (Ind.Ct.App.2003), *trans. denied.* Further, a guilty plea is not automatically a mitigating factor. *Gray v. State,* 790 N.E.2d 174, 177 (Ind.Ct.App.2003). Green claims the court should have found his plea constituted a mitigator because he was taking responsibility for his crime. In spite of his plea, however, Green—both through his testimony and in his defense counsel's closing argument—appeared to maintain that it was Fields who was primarily responsible for the crime and that Fields had intimidated Green into participating. The trial court was entitled to

conclude that Green was not taking full responsibility for the crime and, as a consequence, refusing to assign mitigating weight to the fact that Green was entering a plea. Indeed there was a significant amount of evidence in the record, including taped statements by co-defendants Fields and Allen, implicating Green in the crimes, so his plea may have been more of a pragmatic decision than a bona fide effort at taking responsibility. *See Wells v. State,* 836 N.E.2d 475, 479 (Ind.Ct.App. 2005), *trans. denied.* The court was similarly entitled not to assign Green's young age mitigating weight. At the time of the crime, Green was approximately twenty years old. He admitted to committing, however, four Class A felonies and was convicted for three. We find no error in the court refusing to assign mitigating weight to his age in light of the fact that he had committed such crimes.

In sum, we affirm in part, reverse in part, and remand to the trial court with instructions to vacate Green's conviction for conspiracy to commit robbery and to resentence Green. In doing so we instruct the court to consider aggravators and mitigators in a manner not inconsistent with this opinion. Furthermore we direct that the new sentence may not exceed an aggregate of 105 years, representing a maximum of fifty years for the burglary conviction and a maximum of fifty-five years for the single episode of criminal conduct consisting of the attempted robbery and conspiracy to commit burglary convictions.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded to the trial court with instructions.

---

admission to the accuracy of the report implicates the defendant's Fifth Amendment right against self-incrimination." *Ryle v. State,* 842 N.E.2d 320, 323 n. 5 (Ind.2005).

**24.** *See Vela v. State,* 832 N.E.2d 610, 614 (Ind.Ct.App.2005).

DARDEN, J., concurs.

KIRSCH, C.J., concurs in result.